**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **CHRISTOPHER OLIVER,** | : | |
| **Plaintiff,** | : | |
| | : | |
| **v.** | : | **CIVIL ACTION NO. 26-CV-2465** |
| | : | |
| **NORRISTOWN** | : | |
| **STATE HOSPITAL, *et al.*,** | : | |
| **Defendants.** | : | |

**MEMORANDUM**

**SCHMEHL, J.** **OCTOBER 19, 2026**

Pro se plaintiff Christopher Oliver, who is currently detained at Berks County Jail, alleges that his civil rights were violated when his legal materials were confiscated upon his admission to Norristown State Hospital ("NSH"). For the following reasons, the Court will dismiss Oliver's claims and close this case.

## I. PROCEDURAL HISTORY AND FACTUAL ALLEGATIONS[1]

A review of the state court docket system reveals that Oliver was charged with attempted first-degree murder, aggravated assault, simple assault, and recklessly endangering another person after an incident on June 16, 2023. *See Commonwealth v. Oliver*, CP-06-CR-0002399-2023 (C.P. Berks). Berks County Public Defender Alex Amoroso entered his appearance as Oliver's counsel on September 21, 2023. *Id.* Upon his counsel's application, Oliver was found incompetent to stand trial on January 23, 2024. *Id.* On November 13, 2024, however, the trial court convened a hearing to reassess the competency issue. *See Commonwealth v. Oliver*, No. 557 MDA 2025, 2026 WL

---

[1] The allegations are taken from the Complaint (ECF No. 2), Amended Complaint (ECF No. 10), Second Amended Complaint (ECF No. 14), and publicly available court records, which this Court may take judicial notice. *See Buck v. Hampton Twp. Sch. Dist.*, 452 F.3d 256, 260 (3d Cir. 2006). The Court adopts CM/ECF pagination.

252892, at *5 (Pa. Super. Ct. Jan. 30, 2026). At the hearing, Oliver indicated that he wanted new counsel. *Id.* On December 10, 2024, the trial court determined that Oliver was competent to stand trial and permitted Oliver to proceed pro se. *Id.* at *6. Amoroso was appointed to serve as standby counsel. *Id.* Oliver was convicted of the charges on February 12, 2025, and sentenced on March 20, 2025. *See Commonwealth v. Oliver*, CP-06-CR-0002399-2023 (C.P. Berks). He appealed the judgment and appellate counsel subsequently filed a petition for leave to withdraw, which was denied. *See Oliver*, 2026 WL 252892, at *6. Oliver's judgment was vacated by the Pennsylvania Superior Court on May 1, 2026, and the matter was remanded for a new trial, which has not yet occurred. *See Commonwealth v. Oliver*, CP-06-CR-0002399-2023 (C.P. Berks); *Commonwealth v. Oliver*, 2026 WL 1195615 (Pa. Super. Ct. May 1, 2026). The Superior Court found that the trial court did not discharge its obligation to fully ascertain whether Oliver knowingly, voluntarily, and intelligently waived his right to counsel. *Oliver*, 2026 WL 1195615, at *6.

Oliver filed a Complaint in this court on April 13, 2026, naming as Defendants NSH and several John Does, and seeking to proceed in forma pauperis. (*See* ECF Nos. 1, 2, 3.) The allegations were sparse. Oliver asserted that his legal materials were confiscated upon intake to NSH on April 12, 2024, although he did not specify who was responsible for the alleged violation of his rights. (Compl. at 5, 6.) He described the materials as "seven legal fold[ers] with all the evidence to my criminal case law book Reading Police Dept." (*Id.* at 5.) He further stated that "Alex Amoroso Reading Berks County Public Defender Office sign the appellant for mental health treatment for know at all." (*Id.*)

In a June 9, 2026 Memorandum and Order, this Court granted Oliver's in forma pauperis application and screened the Complaint pursuant to 28 U.S.C. § 1915(e)(2)(B). (ECF Nos. 6, 7.) As discussed more fully in the Memorandum, Oliver's allegations were best construed as a denial

of access-to-courts claim. (ECF No. 6 at 4.) The Court explained that "[w]here prisoners assert that defendants' actions have inhibited their opportunity to present a past legal claim, they must show (1) that they suffered an 'actual injury'—that they lost a chance to pursue a 'nonfrivolous' or 'arguable' underlying claim; and (2) that they have no other 'remedy that may be awarded as recompense' for the lost claim other than in the present denial of access suit." (*Id.* (citing *Monroe v. Beard*, 536 F.3d 198, 205 (3d Cir. 2008).) The Court further explained that "[t]he complaint must describe the underlying arguable claim well enough to show that it is 'more than mere hope,' and it must describe the 'lost remedy.'" (*Id.* at 4–5 (citation omitted).) Additionally, the Court explained the right to access the courts may be satisfied if the plaintiff has an attorney. (*Id.* at 5 (citing *Diaz v. Holder*, 532 F. App'x 61, 63 (3d Cir. 2013).)

The Court dismissed the Complaint because Oliver's state court records indicated that, although he filed pro se submissions in the state case, he was represented by counsel at the time the legal materials were confiscated in April 2024, indeed, until December 2024, and that he had standby counsel thereafter while he proceeded pro se during the criminal trial. (*Id.* (citing *Commonwealth v. Oliver*, CP-06-CR-0002399-2023 (C.P. Berks); *Oliver*, 2026 WL 252892, at *5–6 (describing procedural history of state court prosecution).) More importantly, Oliver failed to assert in the Complaint that the loss of his legal materials caused an actual injury traceable to the loss. (*Id.*) Oliver merely alleged that his legal materials were confiscated upon intake to NSH in April 2024. (*Id.* (citing Compl. at 5–6.) The Court dismissed Oliver's claim because he did not allege what underlying nonfrivolous claims he was unable to pursue because of any Defendant's

actions.[2] (*Id.* (citations omitted).) Oliver was given leave to file an amended complaint if he could allege additional facts to state a plausible claim. (*Id.* at 5, 6; ECF No. 7.)

On July 1, 2026, Oliver filed an Amended Complaint. (ECF No. 10.) Named as Defendants were Alex Amoroso, and NSH employees Tyler Curry, Carolina Retamero, and Michael Roman.[3] (Am. Compl. at 2.) Oliver also filed a motion for appointment of counsel. (ECF No. 9.) He alleged that Alex Amoroso "signed [him] up to go [to NSH] . . . to buy time [to] keep [him] from his Rule 600" and he was forced into treatment by the trial court. (Am. Compl. at 3.) He stated that Roman, Retamero, and "all" of the Defendants were in the treatment room upon his intake to NSH on April 12, 2024. (*Id.*) He was told that he would "get half of [his] legal material[s] when [he] need[ed] more" and that he would have to surrender some before receiving more of the materials.[4] (*Id.*) He stated that he lost his trial and was sentenced to eighteen to forty years imprisonment, and that he

[2] The Court also advised Oliver that there were other deficiencies in his pleading. (*See* ECF No. 6 at 6–7.) Although NSH was a named Defendant, it is not subject to liability for damages under § 1983. (*See id.* at 6 (citing *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 65–66 (1989); 42 Pa. Cons. Stat. § 8521(b); *Matthews v. Norristown State Hosp.*, 528 F. App'x 115, 118-19 (3d Cir. 2013) (per curiam) (stating that NSH is a state institution within the Department of Public Welfare and entitled to Eleventh Amendment immunity).) Additionally, the Court explained that while Oliver could name a John Doe as a defendant if he was uncertain of the individual's identity, he was required to describe how that individual allegedly violated his constitutional rights. (*Id.*) Further, the Court emphasized that to satisfy the pleading standard, Oliver must provide sufficient factual support for his claims. (*See id.* at 7.)

[3] In the caption of the Amended Complaint, Oliver also listed "Norristown State Hospital Social Worker Maiutte" as a Defendant. (Am. Compl. at 1.)

[4] Oliver explained that upon intake to NSH, he was shown to his room and that his folders and legal materials were taken from him. (Am. Compl. at 5.) Oliver represented that he was told that "they have to look into for illegal item and remove all staple from my paperwork they inform me after they go over all my item they was going to give me half of my legal when done I can get the other half can't have all at once their rules." (*Id.*) Oliver attached to the Amended Complaint a copy of an NSH grievance regarding the loss of his legal materials. (*See id.* at 6.)

did not have evidence to present at trial. (*Id.*) He contended that he suffered mental and physical injuries as a result. (*Id.* at 4.) As relief, Oliver sought monetary damages. (*Id.*)

On August 26, 2026, the Court entered a Memorandum and Order in response to the Amended Complaint. (*See* ECF Nos. 11, 12.) But due to a filing error, the Court's prior June 9 Memorandum and Order were re-entered on the docket. (*See id.*) Thus, the August 26 Memorandum and Order did not address the claims presented in the Amended Complaint. The Memorandum and Order entered on the docket on August 26 granted Oliver leave to file an amended complaint, albeit improperly, and a blank form complaint was mailed to him. On September 22, 2026, Oliver filed the Second Amended Complaint ("SAC"). (*See* ECF No. 14.) The Federal Rules of Civil Procedure do not contemplate piecemeal pleadings or the amalgamation of pleadings, *see Argentina v. Gillette*, 778 F. App'x 173, 175 n.3 (3d Cir. 2019) (per curiam), and, in general, an amended pleading supersedes the original pleading and renders the original pleading a nullity, *see Garrett v. Wexford Health*, 938 F.3d 69, 82 (3d Cir. 2019). Thus, the SAC became the operative pleading, and it is subject to statutory screening under § 1915(e)(2)(B). However, in an abundance of caution, when screening the SAC below, the Court will also consider the allegations that Oliver presented in the Amended Complaint.

In the SAC, Oliver names as Defendants Public Defender Amoroso, NHS Social Worker Tyler Curry, and John and Jane Doe NHS staff members. (SAC at 3–4.) He again asserts a First Amendment access-to-the-courts claim and a Fourteenth Amendment due process claim.[5] (*Id.* at

---

[5] Oliver also suggests that his rights under the Pennsylvania Constitution were violated. (*See* SAC at 4.) However, there is no private right of action for damage claims asserted under the Pennsylvania Constitution. *See Moss v. Pennsylvania*, 838 F. App'x. 702, 708 (3d Cir. 2020) (per curiam) (citing *Jones v. City of Philadelphia*, 890 A.2d 1188, 1208 (Pa. Commw. Ct. 2006) ("[N]either Pennsylvania statutory authority nor appellate case law has authorized the award of money damages for violation of the Pennsylvania Constitution.")); *Miles v. Zech*, 788 F. App'x 164, 167 (3d Cir. 2019) (per curiam) ("Pennsylvania does not have a statutory equivalent to § 1983

4.) In support of his claims, Oliver states that he was involuntarily committed for mental health treatment by Defendant Amoroso "to delay [his] case and give [the] Commonwealth time to investigate and look for evidence." (*Id.* at 3, 6.) Oliver was transferred from Berks County Jail to NHS on April 12, 2024. (*Id.* at 5.) He brought with him seven folders and two law books. (*Id.*) Upon intake to NHS, Oliver was interviewed by the treatment team, including a physician, nurse, psychiatrist, social worker, and forensic officer. (*Id.*) Oliver had his materials with him in the interview room at that time. (*Id.*) Oliver was told that his property had to be examined for contraband and the staples removed, and that he would receive half of the materials the following day. (*Id.* at 3.) However, Oliver asserts that his property was never returned to him. (*Id.*) He filed a grievance at NHS regarding the return of his property. (*Id.* at 8.) Oliver contends that he suffered physical and mental harm and was unable to present evidence at his trial. (*Id.* at 6.) As relief, Oliver seeks damages. (*Id.*) He also reasserts his request for appointment of counsel. (*Id.* at 12.)

## II. STANDARD OF REVIEW

Because Oliver has been granted in forma pauperis status, 28 U.S.C. § 1915(e)(2)(B) requires the Court to dismiss the SAC if, among other things, it fails to state a claim. The Court must determine whether a complaint contains "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 566 (2007)); *Talley v. Wetzel*, 15 F.4th 275, 286 n.7 (3d Cir. 2021). At the screening stage, the Court will accept the facts alleged in the pro se complaint as true, draw all reasonable inferences in the plaintiff's favor, and ask only whether that complaint, liberally construed, contains facts sufficient to state a plausible claim. *Shorter v. United States*, 12

---

and does not recognize a private right of action for damages stemming from alleged violation of the state constitution." (citation omitted)). To the extent Oliver seeks to present a claim for damages under the Pennsylvania Constitution, it is not plausible.

F.4th 366, 374 (3d Cir. 2021), *abrogation on other grounds recognized by Fisher v. Hollingsworth*, 115 F.4th 197 (3d Cir. 2024).

As Oliver is proceeding pro se, the Court construes his allegations liberally. *Vogt v. Wetzel*, 8 F.4th 182, 185 (3d Cir. 2021) (citing *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 244–45 (3d Cir. 2013)). However, conclusory allegations do not suffice. *Iqbal*, 556 U.S. at 678; *see also Martinez v. UPMC Susquehanna*, 986 F.3d 261, 266 (3d Cir. 2021) ("A plaintiff cannot survive dismissal just by alleging the conclusion to an ultimate legal issue."). "[P]ro se litigants still must allege sufficient facts in their complaints to support a claim." *Vogt*, 8 F.4th at 185 (quoting *Mala*, 704 F.3d at 245).

## III. DISCUSSION

Oliver alleges that his rights secured by the First Amendment to the United States Constitution were violated. (*See* Am. Compl. at 2; SAC at 4.) The vehicle by which federal constitutional claims may be brought against state actors in federal court is 42 U.S.C. § 1983. "To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law."[6] *West v. Atkins*, 487 U.S. 42, 48 (1988).

[6] To the extent Oliver seeks to present constitutional claims against Defendant Amoroso for actions taken as defense counsel in Oliver's state court criminal prosecution, such claims are not plausible because an attorney performing the traditional functions of counsel is not a state actor for purposes of § 1983. *See Polk County v. Dodson*, 454 U.S. 312, 325 (1981) ("[A] public defender does not act under color of state law when performing a lawyer's traditional functions as counsel to a defendant in a criminal proceeding."); *Webb v. Chapman*, 852 F. App'x 659, 660 (3d Cir. 2021) (per curiam) ("[A]ttorneys representing individuals in criminal proceedings generally are not state actors for purposes of § 1983."); *Clark v. Punshon*, 516 F. App'x 97, 99 (3d Cir. 2013) (per curiam) (noting that a court-appointed attorney is not a state actor for purposes of § 1983); *see also Singh v. Freehold Police Dep't*, No. 21-10451, 2022 WL 1470528, at *2 (D.N.J. May 10, 2022) ("Plaintiff['s] dissatisfaction with the representation provided by Mr. Moschella does not provide a basis for a civil rights claim against him."). Accordingly, any § 1983 claims against Defendant Amoroso will be dismissed.

The SAC is best construed as asserting a denial of access-to-courts claim. *See, e.g.*, *Prater v. City of Philadelphia*, 542 F. App'x 135, 136 n.1, 137 (3d Cir. 2013) (per curiam) (construing pretrial detainee's allegations that he was denied access to counsel and that his legal mail was thrown in the trash as access-to-courts claims). Even upon a liberal reading of the SAC, as well as the Amended Complaint, however, Oliver has failed to plausibly plead a § 1983 claim.

As the Court explained in the June 6 Memorandum, "[u]nder the First and Fourteenth Amendments, prisoners retain a right of access to the courts." *Monroe*, 536 F.3d at 205 (citing *Lewis v. Casey*, 518 U.S. 343, 346 (1996)). "Where prisoners assert that defendants' actions have inhibited their opportunity to present a past legal claim, they must show (1) that they suffered an 'actual injury'—that they lost a chance to pursue a 'nonfrivolous' or 'arguable' underlying claim; and (2) that they have no other 'remedy that may be awarded as recompense' for the lost claim other than in the present denial of access suit." *Id.* (quoting *Christopher v. Harbury*, 536 U.S. 403, 415 (2002)). "The complaint must describe the underlying arguable claim well enough to show that it is 'more than mere hope,' and it must describe the 'lost remedy.'" *Id.* at 205–06 (footnote omitted) (quoting *Christopher*, 536 U.S. at 416–17). In addition, the right to access the courts may be satisfied if the plaintiff has an attorney. *Diaz v. Holder*, 532 F. App'x 61, 63 (3d Cir. 2013) (per curiam) (citations omitted); *see also Prater*, 542 F. App'x at 137 n.4 ("[A]ppointment of counsel is sufficient to provide a pretrial detainee with meaningful access to the courts." (cleaned up). Negligent conduct that affects access to the courts does not violate the constitution. *See Johnson v. Atty. Gen. of U.S.*, 187 F. App'x 154, 157 (3d Cir. 2006) (per curiam) (stating that a plaintiff presenting an access-to-courts claim must allege that officials "intentionally or deliberately" prevented access and allegations of "prior instances of negligent official conduct that had the unfortunate result of obstructing or eliminating the ability to bring a claim, suit, or appeal" are

insufficient to establish a constitutional claim); *Strausbaugh v. Greentree Servicing LLC*, 857 F. App'x 92, 94–95 (3d Cir. 2021) (per curiam) (affirming dismissal of access-to-courts claim where plaintiff failed to allege an "intentional effort to deprive [him] of his right to access the courts" (citations omitted)); *Pressley v. Huber*, 562 F. App'x 67, 71 (3d Cir. 2014) (per curiam) ("No constitutional violation occurs when a prisoner's access to the courts is impeded by mere negligence." (citations omitted)).

The SAC suffers from the same defects as the initial Complaint, even including the allegations in the Amended Complaint. When reviewing a complaint to determine whether a plaintiff has alleged a plausible claim, a court must "disregard threadbare recitals of the elements of a cause of action, legal conclusions, and conclusory statements." *Oakwood Lab'ys LLC v. Thanoo*, 999 F.3d 892, 904 (3d Cir. 2021) (quoting *James v. City of Wilkes-Barre*, 700 F.3d 675, 681 (3d Cir. 2012)). Oliver again fails to plausibly allege that the loss of his legal materials caused an actual injury traceable to the loss. Oliver merely alleges that his legal materials were confiscated upon intake to NSH in April 2024, that he did not have evidence to present at his trial, and that he was convicted. (*See* Am. Compl. at 3; SAC at 3.) Oliver has not described in the SAC or Amended Complaint what underlying nonfrivolous claims or defenses he was unable to pursue because of any Defendant's actions, nor has he described any intentional or deliberate action of any Defendant. Additionally, Oliver's state court records indicate that, although he filed pro se submissions in the state case, he was represented by counsel at the time the legal materials were confiscated in April 2024, indeed, until December 2024, and that he had standby counsel thereafter while he proceeded pro se during the criminal trial. *See Commonwealth v. Oliver*, CP-06-CR-0002399-2023 (C.P. Berks); *see also Oliver*, 2026 WL 252892, at *5–6 (describing procedural history of state court prosecution).

As Oliver has not plausibly alleged that any Defendant intentionally or deliberately prevented him from pursuing a nonfrivolous challenge to his conviction or sentence, he has not plausibly alleged an access-to-courts claim. *See Monroe*, 536 F.3d at 206 (finding that plaintiffs' allegations that "they lost the opportunity to pursue attacks of their convictions and civil rights claims" without "specify[ing] facts demonstrating that the claims were nonfrivolous" did not state a claim); *see also Walters v. Harry*, No. 25-3579, 2026 WL 1298057, at *1 (3d Cir. May 12, 2026) (per curiam) (affirming dismissal of access-to-courts claim where plaintiff failed to describe his underlying claim well enough to establish that it was "more than hope"); *Williams v. Sorber*, No. 24-2046, 2025 WL 1419716, at *4 (3d Cir. May 16, 2025) (per curiam) (affirming dismissal of First Amendment access-to-the-courts claim where plaintiff failed to "explain how access to the law library would have assisted in the preparation of his request to file a petition for allowance of appeal nunc pro tunc, nor did he identify why the underlying challenge to his sentence would have been successful" (citing *Monroe*, 536 F.3d at 205–06)); *Presbury v. Wetzel*, 789 F. App'x 294, 295 (3d Cir. 2020) (per curiam) (affirming the dismissal of access-to-courts claim based on loss of plaintiff's legal property where plaintiff "did not allege any facts about the merits of his underlying claim" and did not "demonstrate that the loss of his legal materials, while unfortunate and inconvenient, has rendered him unable to seek the District Attorney's review"); *Talley v. Varner*, 786 F. App'x 326, 328 (3d Cir. 2019) (per curiam) (affirming dismissal of access-to-the-courts claim where inmate failed to allege what underlying nonfrivolous claims he was unable to pursue). Accordingly, Oliver's access-to-courts claim will be dismissed.

To the extent Oliver claims that NSH staff wrongfully confiscated his legal materials in violation of his due process rights under the Fourteenth Amendment, such § 1983 claim must be dismissed as well. The existence of the NSH grievance procedure, of which Oliver availed himself,

forecloses such a due process claim. *See Hudson v. Palmer*, 468 U.S. 517, 533 (1984) (holding that negligent and intentional deprivations of property do not violate due process if meaningful postdeprivation remedies are available); *Mbewe v. Delbalso*, No. 23-2054, 2024 WL 510500, at *3 (3d Cir. Feb. 9, 2024) (per curiam) (stating that the prison grievance procedure provides an adequate postdeprivation remedy (citing *Tillman v. Lebanon Cnty. Corr. Facility*, 221 F.3d 410, 422 (3d Cir. 2000)); *see also Ransome v. Longstreth*, No. 23-1726, 2023 WL 6122139, at *2 (3d Cir. Sept. 19, 2023) (per curiam) (affirming dismissal of procedural due process claim related to deprivation of property where it was plain from the face of the complaint that an adequate postdeprivation remedy existed, namely the prison grievance process); *Pressley*, 562 F. App'x at 69–70 ("Intentional and negligent deprivations of property do not violate due process if meaningful postdeprivation remedies for the loss are available. Pressley had adequate remedies in both state tort law and the prison grievance process." (citations omitted)).

## IV. CONCLUSION

For the foregoing reasons, the SAC will be dismissed with prejudice pursuant to 28 U.S.C § 1915(e)(2)(B)(ii) for failure to state a claim. As Oliver has already been given an opportunity to cure the defects in his federal law claims and has been unable to do so, the Court concludes that further amendment would be futile. *See Jones v. Unknown D.O.C. Bus Driver & Transp. Crew*, 944 F.3d 478, 483 (3d Cir. 2019) (amendment by pro se litigant would be futile when litigant "already had two chances to tell his story"); *Krantz v. Prudential Invs. Fund Mgmt. LLC*, 305 F.3d 140, 144 (3d Cir. 2002) (per curiam) ("A District Court has discretion to deny a plaintiff leave to amend where the plaintiff was put on notice as to the deficiencies in his complaint, but chose not to resolve them." (citation omitted)). Oliver's request for appointment of counsel will be denied as moot. *See Tabron v. Grace*, 6 F.3d 147, 155 (3d Cir. 1993) (stating that the court should first

determine whether a plaintiff's lawsuit has a legal basis when determining whether appointment of counsel is appropriate).

An Order follows, which dismisses this case and which shall be entered separately in accordance with Federal Rule of Civil Procedure 58.

**BY THE COURT:**

*/s/ Jeffrey L. Schmehl*
**JEFFREY L. SCHMEHL, J.**